### WHITE v. WESTER et al.

No. 22824. Oct. 30, 1934.

Rehearing Denied Jan. 8, 1935.

Roberts & Clark, for plaintiff in error.

A. R. Hipps and J. W. Bashore, for defendants in error.

PER CURIAM. This action was brought by G. R. White against Hettie Wester, H. D. Wester, Joseph White, and Willy White to cancel certain instruments and quiet title to 240 acres of land in Craig county, Okla. Before trial the plaintiff died, and the action was revived in the name of J. C. White, administrator. From a judgment for the defendants, the plaintiff appeals.

G. R. White had been married twice and raised two sets of children. J. C. White, the administrator, and two other children were born of the first marriage. The defendants Hettie Wester and Joseph White were the only children of the second marriage. The defendants H. D. Wester and Willy White are husband and wife, respectively, of these two children, and have no other interest in the property and controversy.

Prior to 1910, G. R. White and M. A. White, his second wife, assisted by their daughter, Hettie, successfully conducted a small store in Missouri. From the earnings they bought 320 acres of land in Arkansas in the name of M. A. White and accumulated $5,500 in cash. Domestic troubles developed. With the cash G. R. White bought 240 acres of land in his name in Craig county, Okla., on the 30th day of April, 1910. The controversy is over this land, and particularly over a certain instrument in the form of a deed executed by G. R. White and his wife, M. A. White, to Hettie Wester (then Sparks) and Joseph White, on May 15, 1911, which we quote in full as follows:

"Deed.

"State of Oklahoma, County of Craig. ss.

"Know All Men by These Presents: That G. R. White and his wife, M. A. White, of the county of Carroll and state of Ark., parties of the first part, in consideration of the sum of five thousand and five hundred ($5,-500) dollars in hand paid, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey to Hetty Sparks and Joseph White, parties of the second part, to vest in them on and after our death, the following real property and premises situate in Craig county, and state of Oklahoma, to wit: (240 acres in Craig county, Oklahoma) together with all the improvements thereon and the appurtenances thereto belonging and warrant the title to the same unto Hetty Sparks and Joseph White. To have and to hold said described premises unto the said party of the second part, their heirs and assigns forever, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages, and other liens and incumbrances of whatsoever nature, except our life estate in said lands above mentioned.

"Signed and delivered this 15th day of May, 1911.

"G. R. White (seal)
"M. A. White (seal)

"State of Arkansas, County of Carroll:

"Before me, a notary public, in and for said county and state, on the 22nd day of May, 1911, personally appeared G. R. White and wife, M. A. White, husband and wife, to me known to be the identical persons who executed the within and foregoing instrument and each for themselves acknowledged to me that they executed the same as the free and voluntary act and deed for

the uses and purposes therein set forth.

"Witness my hand and official seal the day and date above written.

"H. N. Pittman, Notary Public. "(Seal) Com. ex. Oct. 17, 1914."

At the same time G. R. White and M. A. White, his wife, executed a warranty deed, without condition, conveying to Hettie Sparks three acres out of the same land. This was a building site on which Hettie later built a house in which she lived for a time.

These two deeds were both executed and acknowledged at the same time before the same notary public in Carroll county, Ark., and they were both received for record by the county clerk of Craig county, Okla., from Hettie Sparks on 11-2-11, and after they were recorded these deeds were returned by mail to Hettie Sparks at Berryville, the county seat of Carroll county, Ark.

On June 16, 1917, Joseph White and his wife, Willy White, executed a deed conveying all their right, title and interest in the land to Hettie Wester. This deed was recorded on the 11th day of August, 1917. At the time of this transaction Joseph White was living in Carroll county, Ark., and Hettie Wester was living in Nezperce county, Idaho. At the same time Hettie Wester executed an instrument relinquishing to her brother, Joseph White, all her interest in the 320 acres of land that had been acquired by their mother in Arkansas. There was a cash difference of $200 in value paid by Hettie to Joseph. G. R. White was visiting his daughter, Hettie, in Idaho at the time, and was instrumental in negotiating and bringing about this exchange of deeds. On June 16, 1917, and as a part of the same negotiations, M. A. White, wife of G. R. White, of Berryville, Carroll county, Ark., executed a deed without conditions, conveying to Hettie Wester the entire 240 acres of land in Craig county, Okla. This deed was recorded on the 11th day of August, 1917.

On the 5th day of October, 1929, G. R. White commenced this action by filing his petition in the district court of Craig county, Okla.; he alleged that he was the owner of the title in fee simple to and in possession of the 240 acres of land involved in this controversy; that the defendants claimed some adverse interest, which was a cloud on his title; that on May 15, 1911, he and his wife executed an instrument designated as a "deed," which provided that the title should vest in Hettie Sparks, now Wester, and Joseph White, on and after his death; that he had been married before he married M. A. White and had children by the former marriage; that it was his intention at the time he made said instrument that it should serve as a will, and on his death pass said property to the grantees, they being his only children by his last marriage; that there was no consideration and that said instrument was not intended to pass any interest in the property during his lifetime, but was intended to be testamentary in character and to serve only as a will. A copy of the deed was attached to the petition and is set out at length in this opinion. He alleged that the instrument was recorded and "plaintiff hereby revokes said instrument and asks that it be canceled of record." He also pleaded the deed from Joseph White and his wife to Hettie Wester, and asked that it be canceled. In the prayer he asked a cancellation of these two deeds and also asked for a cancellation of the deed from M. A. White to Hettie Wester.

G. R. White died on May 24, 1930, and the action was revived in the name of J. C. White, administrator of his estate. Thereafter, the administrator filed an amended petition embodying everything contained in the original petition, and enlarged thereon by alleging that the deed was never delivered to the grantees by G. R. White; that he never recorded the instrument or authorized any other person to do so; that up to a short time before bringing this action, it had been the intention of G. R. White that the instrument should be delivered to the grantees upon his death; that the instrument was not witnessed and executed as a will.

The defendants Hettie Wester and H. E. Wester answered this amended petition, joining issue on all controverted questions; they plead affirmatively:

"That Joseph White and wife, Willy White, on or about the 16th day of June, 1917, for a valuable consideration, and in consideration of $200 as recited in said deed, and conveyances of other lands in which Hettie Wester was interested, executed with the full knowledge and procurement of G. R. White, their deed to Hettie Wester, and that with the knowledge and acquiescence of G. R. White, Hettie Wester transferred or permitted to be transferred to Joseph White other lands that belonged to her in consideration of same. They further say that the deed, which is set out in the petition as having been made by G. R. White and his wife, was not testamentary in character, or intended to be so, but was a conveyance with a reservation of a life-

time interest in the property in G. R. White and his wife. They further say that on the 16th day of June, 1917, Mrs. M. A. White, the wife of G. R. White, with the full knowledge and acquiescence of G. R. White, for a valuable consideration, conveyed to Hettie Wester all her right, title and interest in and to said property and the deed of conveyance is set out in the petition and recorded in the office of the county clerk of Craig county, Okla."

On these issues the case was tried to a jury resulting in a general verdict for the defendants.

The legal issues involved are stated in plaintiff's brief as follows:

"The main contentions of the plaintiff were and are that the instrument designated a deed passed no present interest in the property, since it provided in the granting clause that the title should vest on and after the death of the grantors; that the deed was never delivered, but was wrongfully taken from the possession of the grantor, G. R. White, and placed on record without his knowledge or consent and against his will.

"* * * And also that the court committed prejudicial and reversible error in permitting the defendants Hetty Wester and H. D. Wester, her husband, to testify in this action concerning transactions and conversations with the decedent since the action was one between the administrator of the decedent's estate and these defendants."

Three legal questions are therefore presented as follows:

First: Was the instrument in question a deed passing a present interest in the property, but reserving a life estate?

Second: If a deed, was it delivered?

Third: Does the record disclose reversible error in the testimony of Hettie Wester and her husband?

■ ■ ■ The instrument involved in the first question is an ordinary warranty deed in every respect, except for two clauses therein; in the granting clause, it says, "Do hereby grant, bargain, sell and convey to Hetty Sparks and Joseph White, parties of the second part, **to vest in them on and after our death,** the following real property, etc.," and in the habendum clause, it says, "To have and to hold said described premises unto the said party of the second part, their heirs and assigns forever, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens and incumbrances of what-

soever nature, **except our life estate in said lands above mentioned."**

What was the intention of the parties to this instrument, and how shall we arrive at that intention?

We can again say what was said by this court in the case of Nobell v. Town of Beaver et al., 133 Okla. 247, 271 P. 420:

"Numerous cases may be found from practically every state in the Union in which the courts have been called upon to construe language used in instruments of this character, and in many of the cases practically the same language has been differently construed by different courts. We have examined many cases in which the question here involved is discussed, but, in our opinion, it would serve no useful purpose to enter into an extended discussion thereof. The only conclusion to be reached from the mass of decided cases is that each case must be governed and decided according to the particular facts of the individual case."

In the case of Smart et al. v. Bassler, 101 Okla. 39, 223 P. 352, this court pointed the way in construing instruments of this kind as follows:

"In the earlier decisions much importance was attached to the language used in the different clauses of a deed, but the modern tendency is to ignore the technical distinctions between the various clauses, and to ascertain, if possible, the intention of the grantor from the entire instrument without undue preference to any part."

In the case of Aldridge et al. v. Aldridge et al. (Mo.) 101 S. W. 42, the guide for interpretation is comprehensively stated as follows:

"The cardinal rule of interpretation of a deed is the true intent and purpose of the maker, as that intent may be discerned from the instrument itself, taking it all together, considering every part of it, and viewing it in light of the circumstances surrounding the maker at the time of its execution."

Referring again to the case of Nobell v. Town of Beaver et al., supra, this court said:

"The cases all agree that where a present interest in the land is conveyed by the instrument, such instrument will be construed as a deed, notwithstanding possession is postponed until after the death of the grantor."

This principle can be carried one step further; the term "interest" in land may be distinguished from and should not be confused with the term "estate" therein,

and therefore a deed may pass a "present interest" in property while the "estate therein" is a future one. Shaull et al. v. Shaull et al., 182 Iowa, 770, 166 N. W. 301, 11 A. L. R. 15, and authorities cited in an extended note on pages 36, 37, 38.

If the instrument under consideration is not a deed conveying a "present interest" in the land, then it has no validity for it cannot be enforced as a will because it is not properly subscribed and attested.

It may be assumed that the makers were persons of ordinary intelligence; that they knew the difference between a will and a deed, and that they intentionally used an ordinary statutory warranty deed for the purpose they wish to accomplish. It may also be assumed that they intended to execute a valid instrument rather than an abortive one, and it is the duty of the court to construe and enforce the instrument as executed, if possible, rather than strike it down as invalid.

Everything contained in the instrument is consistent with a present grant of an interest in the property, including the estate therein except for the clause which says "to vest in them on and after our death." If the grantors so intended, this limitation is consistent with the passing of a present interest even though the enjoyment of the estate is postponed to a later time. The intention of the parties must be gathered from the entire instrument, taking it all together, considering every part of it, and viewing it in light of the circumstances surrounding the makers at the time of its execution; and their later acts in connection therewith may be considered in arriving at their intention. These circumstances and acts are set out briefly in our statement of the facts, and need only be recalled. The exception in the habendum clause of the deed, "except our life estate in said lands above mentioned," is likewise consistent with the granting of a present interest in the property; for how could they reserve a life estate if no present interest had been granted? Moreover, this clause is in itself a definition of and a limitation on the clause, "To vest in them on and after our death." When read together they appear to mean the same thing and that thing the reservation of a life estate.

The plaintiff contends that the instrument in question should be held invalid as a deed on the authority, Herren et al. v. Herren, 152 Okla. 281, 4 P. (2d) 92. The situation in that case, like the one here, was a difficult one, but the conclusion reached does not necessarily help the plaintiff; for there is a material difference in the granting clauses of the instruments; the granting clause in the Herren Case says, "All the right, title, interest and estate of the party of the first part, after the death of the said party of the first part, in and to the land and premises," etc. Nothing here to prevent the grantor from disposing of the property during his lifetime because he only conveyed such interest as remained after his death. while G. R. White and wife used this language, "Do hereby grant, bargain, sell, and convey to Hetty Sparks and Joseph White, parties of the second part, to vest in them on and after our death, the following real property," etc. Obviously, quite a difference; all the difference between present and future; in the Herren Case the grant was future and contingent upon ownership at death, while in the White instrument the grant of an interest was in praesenti to take effect in the future. There are other material differences and distinctions which are obvious.

We conclude and hold that the instrument was and is a valid deed passing a present interest in the property, subject to the life estate reserved by the grantors. This is the conclusion reached by the trial court and covered by instruction No. 2, to which the plaintiff excepted. Saunders v. Saunders (Iowa) 88 N. W. 329.

■ ■ The question of whether this instrument, which we have found to be a deed, was delivered by the grantors, was submitted to the jury under instructions 7 and 8, which fairly stated the applicable law. In Stevens v. Dewey, 162 Okla. 112, 19 P. (2d) 371, this court held that a finding by the jury, on a question of fact in issue, is conclusive on the Supreme Court on appeal. Again, in the case of Gilbert v. Welchel et al., 162 Okla. 133, 19 P. (2d) 609, this court said:

"Where there is any competent evidence reasonably tending to sustain a verdict, though the evidence be conflicting, and the cause is submitted to the jury upon instructions fairly stating the applicable law, this court will not review the evidence for the purpose of determining the weight thereof, in an effort to substitute its judgment for the judgment rendered on the verdict, and the verdict will not be disturbed on appeal."

The sufficiency of the evidence to support the verdict was not challenged either by a demurrer thereto or by a motion for a directed verdict. While we were, therefore, not called upon to do so, yet we

have searched the record and find that there was competent evidence reasonably tending to support the verdict.

The next question raised by the plaintiff goes to the competency of Hetty Wester and H. D. Wester to testify concerning transactions and conversations had with G. R. White, deceased. We have searched the record carefully and do not deem it necessary to pass on the competency of either of them to testify. The record discloses that Hetty Wester testified at length on all questions at issue both on direct and on cross-examination, and the question of her competency was never raised by the plaintiff either by objection or motion to strike, except as to one question asked by her counsel, and this objection was sustained. The same thing is true as to H. D. Wester with one exception during his direct examination. Here is the record:

"Q. You have talked to Mr. White about this deed that he gave your wife? A. Yes. Q. Did he ever say anything to you about wanting to cancel that deed? A. No, sir. By Mr. Roberts: We object to that as he is one of the defendants in the case."

This objection was overruled and an exception taken. Assuming without deciding that the objection went to his competency as a witness, and assuming without deciding that he was incompetent, the error would be harmless. The only question of fact submitted to the jury was that of whether the deed had been delivered, and it could hardly be said that this testimony seriously touched or influenced that question.

Under our procedure there is a time, a place, and a method of making a record for appeal on questions of this nature. The plaintiff did not choose to make that record in this case, and it is too late to raise the question for the first time in the Supreme Court. Miller v. Nanny, 91 Okla. 150, 216 P. 662; Coons v. Coons, 128 Okla. 172, 261 P. 944; Sweat v. Skaggs, 138 Okla. 141, 280 P. 591; In re Dearborn's Estate. McCreath v. Dearborn, 151 Okla. 58, 2 P. (2d) 93; Tinley v. Ammerman, 150 Okla. 215, 299 P. 918.

Judgment affirmed.

The Supreme Court acknowledges the aid of Attorneys E. C. Stanard, John L. Goode, and I. C. Saunders in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Stanard, and approved by Mr. Goode and Mr. Saunders, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.