## ROGERS v. DICKERSON.

No. 25964.  Feb. 9, 1937.

Rehearing Denied Sept. 28, 1937.

Thos. H. Owen and Paul N. Lindsey, for plaintiff in error.

W. P. Morrison, A. L. Morrison, John Morrison, and Ray K. Bannister, for defendant in error.

BAYLESS, V. C. J.  This is an appeal from the district court of Oklahoma county, Okla., wherein Leon D. Dickerson, plaintiff below, defendant in error here, recovered a judgment for $4,000 and costs against Dr. McLain Rogers, defendant below, plaintiff in error here.  The parties will be referred to as they appeared in the lower court.

For an understanding of the fact situation we give the following statement, and as we discuss the different assignments of error we will give the facts and evidence pertinent to the question involved:

On or about the last day of September, 1931, the plaintiff sustained an injury to his left arm in an automobile accident.  After the accident he and other people drove his car to Clinton, where the plaintiff placed himself under the care of the defendant, a doctor, and in his hospital.  The plaintiff alleges that the defendant negligently treated him and that he unnecessarily amputated his arm without telling the plaintiff beforehand or obtaining his consent. The case was tried to the court and jury, and the jury returned a verdict for the plaintiff giving him a judgment for $4,000, which was approved by the court, from which the defendant appeals.

596

The defendant makes seven assignments of error in his brief but subdivides them in such a manner that there are ten propositions presented. The first seven propositions relate to the admissibility of certain evidence, of the value of certain testimony, and the weight of the evidence generally. The remaining three are:

"(8) The court erred in refusing to give instruction No. 2, requested by the defendant.

"(9) The court erred in allowing plaintiff's attorney to question the jurors on their voir dire as to their interest in liability insurance companies.

"(10) A new trial should have been granted on the ground of newly discovered evidence."

Some of the assignments of error were not included in these propositions and were not argued in the briefs of the defendant. We will not discuss those assignments not briefed and argued.

The first seven of these propositions may be disposed of together and to do so we must set out parts of the testimony of the different witnesses, bearing in mind that we are only examining enough of the evidence to justify the court in submitting the case to the consideration of the jury. See Kelley v. McKay, 120 Okla. 215, 251 P. 82; Curry v. Jeter, 109 Okla. 200, 235 P. 188; Oklahoma Union Ry. Co. v. Mitchell, 105 Okla. 152, 231 P. 1062, and many other cases.

The plaintiff testified as to the outward appearance of his arm, describing it in a manner that any layman might describe such an injury. Then Dr. E. C. Wilson was qualified as an expert and testified for the plaintiff as follows:

"Q. You heard the testimony of the plaintiff in this case regarding the injury that he sustained? A. Yes, sir. Q. Assuming these facts to be true, Doctor, in your opinion as a physician and surgeon, was the operation such as he had, amputation of the arm, necessary? A. No, sir."

Other questions were asked the doctor pertaining to the injury, but at no time was an objection made to the testimony of Dr. Wilson or the plaintiff. The defendant attempts to raise an objection at this time to this testimony, but this court will not permit a party to raise a question of the competency of parties to testify and their testimony on appeal when he has not made an objection and saved his exception in the lower court. See Muskogee Electric Traction Co. v. McIntire, 37 Okla. 684, 133 P. 213; Sheean v. Walden, 130 Okla. 51, 26

P. 141; J. R. Watkins Co. v. Jennings, 131 Okla. 295, 269 P. 265; Tinley v. Ammerman, 150 Okla. 215, 299 P. 918. Thus we see that there was expert testimony as to the lack of necessity of the amputation and there was sufficient testimony for consideration by a jury.

Propositions 5 and 7 are inapplicable, since the testimony of Dr. Wilson is directly in conflict with the testimony of the expert witnesses for the defendant, making an issue of fact to be passed on by the jury. The testimony of the plaintiff and other witnesses shows that on two occasions when the defendant examined plaintiff's arm he advised him that it would not be necessary to amputate his arm, which testimony was not objected to by the defendant, but the defendant cross-examined the witnesses on that point. Since the foregoing testimony was not objected to, but accepted by the defendant, there were issues of fact to be decided by the jury and properly submitted to it.

Defendant contends under proposition 8 that the court erred in refusing to give his requested instruction No. 2, which is as follows:

"You are instructed that if you find from the evidence that the plaintiff consented to the amputation of his arm, then your verdict must be for the defendant."

The court gave the following instruction:

"* * * The defendant without the consent of the plaintiff would have no right to amputate his arm. If you find from the evidence that the plaintiff did not consent to the amputation of his arm, then your verdict must be for the plaintiff, unless you further find that the amputation was necessary."

Upon reading these instructions we should give them the most logical and reasonable construction. The instruction given by the court is to an extent ambiguous, but the most simple reasoning would find it to mean that if the defendant had performed the amputation without the consent of the plaintiff, the defendant would be liable, while if the court were to have stated the instruction in the reverse manner, to obtain the same result he may have said that if the defendant performed the amputation with the consent of the plaintiff, then the defendant would not be liable and plaintiff could not recover. So the instruction given by the court contained in substance the same instruction requested by the defendant. It is not necessary for the court to state the instructions in both the positive and negative form, so long as the proper rule of law is

stated. City of Chickasha v. Daniels, 123 Okla. 73, 251 P. 978, 51 A. L. R. 568; City of Tulsa v. Springfield Life Ins. Co., 157 Okla. 218, 11 P. (2d) 493.

The 9th proposition complains of the court permitting attorney for plaintiff to inquire in the voir dire if the jurors were interested in insurance companies that wrote liability insurance. The rule of law:

"In a suit for personal injuries, after the jury has been sworn and placed in the jury box, no references should be made to whether or not the defendant carried insurance, and if such references are made, it is reversible error, although the trial court instructs the jury not to consider the same"

—quoted by plaintiff is entirely correct, but this rule of law does not prohibit a party to an action from inquiring on voir dire into the interests that a juror may have in the particular case. In the case at bar this court is of the opinion that such a question was proper for the protection of his client and yet did not give the jury notice that the defendant was protected with insurance, for the reason that had the jurors been interested in an insurance company that carried liability insurance for the defendant at that time, they would have had a monetary interest in the case and would not have been qualified as jurors. See 35 C. J. 314, sec. 326, and notes; Putnam v. Pacific Monthly Co., 68 Ore. 36, 130 P. 986; and Louis Pisitz Dry Goods Co. v. Cusimano, 206 Ala. 689, 91 S. 779; Harris v. Elliott, 178 Okla. 98, 61 P. (2d) 1089; and Green Const. Co. v. Lampe, 174 Okla. 351, 50 P. (2d) 286.

Proposition 10 contends that a new trial should be granted on the ground of newly discovered evidence, but after a perusal of the record and affidavit attached to the motion for new trial, we find that the proposed newly discovered evidence is either cumulative or immaterial and is not sufficient to grant a new trial.

The judgment is affirmed.

OSBORN, C. J., and WELCH, PHELPS, and HURST, JJ., concur.

On Rehearing.

GIBSON, J. (dissenting). The plaintiff concedes the rule to be:

"Where the injuries are of such a character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science, and must necessarily be determined by the testimony of skilled professional persons, and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries." Inter-Ocean Oil Co. v. Marshall, 166 Okla. 118, 26 P. (2d) 399.

Plaintiff asserts that there was sufficient expert testimony in this case based upon lay evidence to support the verdict. The defendant, on the other hand, claims that the testimony is insufficient because there were undisputed facts not taken into consideration by the expert of the plaintiff and also there was lacking certain evidence which could be supplied only by an expert under the recognized rule.

The plaintiff testified as to the outward appearance of his arm, describing it in a manner that any layman might describe such an injury. Then Dr. E. C. Wilson was qualified as an expert and testified for the plaintiff as follows:

"Q. You heard the testimony of the plaintiff in this case regarding the injury that he sustained? A. Yes, sir. Q. Assuming these facts to be true, Doctor, in your opinion as a physician and surgeon, was the operation such as he had, amputation of the arm, necessary? A. No, sir."

It is, however, apparent from this case that the outward appearance of the arm could not disclose the real nature and extent of the injuries to plaintiff. It was material to know the nature and extent of the bone fractures, the nature and extent of the injury to the arteries, and the nature and extent of the damage to the nerves. There may have been a conflict in the testimony as to certain external manifestations of the injuries, but upon the facts actually shown by the X-ray there was no conflict of testimony. Similarly, the actual condition of the arteries was an undisputed fact.

Plaintiff cites the case of Rogers v. Sells, 178 Okla. 103, 61 P. (2d) 1018. It is clear, however, from that case that the expert considered the X-ray pictures highly important to a correct diagnosis of the case and also considered the actual condition of the arteries as very material. In that case the plaintiff's expert testified that he would have taken an X-ray picture to determine the condition of the patient's foot, and that the mangled or destroyed condition of the main artery should have been determined before amputation. In effect, therefore, the expert in that case stated that only expert testimony could determine those conditions. In the case at bar X-ray pictures were taken and the true condition of the artery determined before operation.

In the case of Rogers v. Sells, supra, this court held that an expert may give his opinion in answer to hypothetical questions based upon the lay testimony as to commonplace and objective facts. Although such testimony may be competent, it does not necessarily follow that it is sufficient to make out a case. Proof of other facts in the case may require expert testimony. Certainly in this case the interpretation of the X-ray pictures required an expert's knowledge, and a layman would not be qualified to tell whether an artery was so mashed or mangled as to be irreparable.

We think this case falls within the rule announced in the case of Inter-Ocean Oil Co. v. Marshall, supra, as to those facts which were not obvious to the eye, specifically as to the extent of the injuries.

The testimony of defendant's experts related to the conditions shown by the X-ray pictures as well as to the probable effects of such conditions. Although an expert on X-ray, plaintiff's expert was not called upon to interpret these pictures. The plaintiff's expert did not see the artery, but admitted it might have been mashed and sealed. The extent of its mashed or mangled condition and the consequent extent of the impairment to circulation could only be determined by persons expert in anatomy or surgery.

Whilst the defendant may not now challenge the competency of so much of the testimony as was offered by the plaintiff, for the reason that no objections were made thereto, defendant can challenge the sufficiency of such testimony to support the finding of the jury. If evidence material and necessary to make a case for plaintiff was lacking, the case should not have been submitted to the jury.

In this case the plaintiff's expert testimony was confined solely to hypothetical questions. Dr. Wilson did not see the patient. He was not asked as to his opinion as to the specific facts actually found concerning the bones, the blood circulation, or nerves.

In order to be sufficient proof to establish the ultimate issue, the testimony of the expert must be such as to embrace the undisputed facts as well as to cover a party's theory based upon disputed facts.

"* * * A hypothetical question propounded to an expert must be based upon all the competent evidence offered on the issue upon which hypothetical question is founded. * * *" Makins Sand & Gravel Co. v. Hill, 151 Okla. 214, 3 P. (2d) 432.

And:

"Where the question assumes facts directly in conflict with the undisputed facts in the case, it is wholly valueless as a hypothetical question. * * *" Johnson v. Clarke (Cal. App.) 276 P. 1052.

Plaintiff sued for the wrongful amputation of his arm. It was necessary for him to establish that theory by expert testimony. Skidmore v. Oklahoma Hospital, 137 Okla. 133, 278 P. 334; Coulter v. Continental Oil Co., 130 Okla. 199, 266 P. 463; St. Louis & S. F. Ry. Co. v. Criner, 41 Okla. 256, 137 P. 705; Willett v. Johnson, 13 Okla. 563, 76 P. 174. In this he has completely failed. In view of the undisputed and uncontradicted evidence of defendant, showing the extent of plaintiff's injury and the consequent necessity for the amputation of plaintiff's arm in order to preserve his life, I am of the opinion that the trial court erred in refusing to direct a verdict in favor of defendant.

For the foregoing reasons I dissent.