Raymond PICARD, Appellant
(Defendant below),

v.

Evelyn Kathryn RICHARDS, Appellee
(Plaintiff below).

Evelyn Kathryn RICHARDS, Appellant
(Plaintiff below),

v.

Raymond PICARD, Appellee
(Defendant below).

Nos. 3014, 3017.

Supreme Court of Wyoming.

Nov. 8, 1961.

W. A. Smith, Lander, Smith, Nicholas & Clark, Lander, on the brief, for Picard.

Frank C. Mockler, Lander, Crofts, Mockler & Meier, Lander, on the brief, for Richards.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

In this case Evelyn Kathryn Picard obtained a divorce from Raymond Picard on June 10, 1958. She subsequently married a man by the name of Richards. Prior to the divorce decree, the parties entered into a property settlement. Under that agreement Evelyn Kathryn Picard received the title to certain lots in Shoshoni, Fremont County, Wyoming. She sold, assigned and conveyed to Raymond Picard all right, title, interest, claim or demand that she might have in and to certain lands in Fremont County, Wyoming, which it is not necessary to describe herein, with the following reservation:

"Reserving unto the said Evelyn Katherine Picard a non-participating 20% royalty interest in and to the above-described lands and premises during her lifetime only, it being specifically understood that the said Raymond Picard shall retain all control of said royalty subject to full disclosure at any reasonable time to Evelyn Katherine Picard."

This agreement was dated May 6, 1958. On the 19th of May, 1958, Evelyn Kathryn Picard executed a quitclaim deed to the lands above mentioned. The reservation in that deed reads as follows:

"Reserving unto the said Evelyn Kathryn Picard a non-participating 20% royalty interest in and to the above-described lands and premises during her lifetime only, it being specifically understood that the said Raymond Picard shall retain all control of said royalty subject to full disclosure at any reasonable time to Evelyn Kathryn Picard."

The decree of divorce above mentioned provided, with the understanding and agreement of both the parties, that the reservation contained in the agreement between the parties be modified and amended as follows:

"Reserving unto the said Evelyn Kathryn Picard a non-participating undivided one-fifth of the parties mineral interest in and to the above-described lands and premises during her lifetime only, it being specifically understood that the said Raymond Picard shall retain all control of said mineral interest subject to full disclosure at any reasonable time to Evelyn Kathryn Picard."

On June 16, 1958, six days after the divorce decree was entered, the parties entered into a stipulation reciting the reservation of a royalty interest under the original agreement between the parties and the deed above mentioned, stating that they desired to amend, modify and clarify the quitclaim deed, and reciting further that the deed was amended, modified and clarified "and each of the said parties do hereby make to the other such conveyance that the said Evelyn Kathryn Picard does now own, and the only interest said Evelyn Kathryn Picard now owns in the lands and premises and estate therein described is a life estate in a non-participating undivided one-fifth of the mineral estate owned by the parties in the described lands and premises * * *, it being specifically understood that the said Raymond Picard has all control of said undivided one-fifth of such mineral estate subject to accounting and full disclosure at any reasonable time to the said Evelyn Kathryn Picard."

As above mentioned, Mrs. Picard remarried soon after the divorce was granted and, on September 19, 1958, she, under the name of Evelyn Kathryn Picard Richards, and Raymond Picard gave a mineral lease to the California Company to the above-mentioned lands, reserving the usual royalty of one-eighth. Some eighteen months later, namely, on February 3, 1960, Evelyn Kathryn Richards brought an action against Raymond Picard, alleging the mineral in-

terest reserved in her behalf in the divorce decree above mentioned, alleging that Raymond Picard had received a bonus and rental, and asking to recover her proportionate interest therein. An answer was duly filed in which it was admitted that the bonus and delay rental received by Raymond Picard amounted to $14,624.75. The answer denied the right of Mrs. Richards to recover any bonus and delay rental, asked that the court enter judgment to that effect, and asked for such further relief as would be just.

The action came on for trial on May 11, 1960. The court, among other things, held:

"It is therefore considered, ordered, adjudged, decreed and declared that the plaintiff, Evelyn Kathryn Richards, is an owner and holder of an undivided one-fifth royalty interest or non-participating mineral interest during her lifetime only, in and to all oil, gas and other minerals in and under the following-described premises:

[Here the premises were described.]

and that the defendant, Raymond Picard, is the owner of the remainder of all mineral rights in and to the above-described lands and premises, subject to the above royalty ownership held by the said Evelyn Kathryn Richards * * *.

"It is further considered, ordered, adjudged, decreed and declared by the Court that the said royalty interest, herein declared to be held by the said Evelyn Kathryn Richards, does not carry any right in the said Evelyn Kathryn Richards to participate in any rents or bonus payments derived from the leasing by defendant, Raymond Picard, of the mineral estate in and to said premises, and the plaintiff's petition to share in rents, issues and bonus payments derived by defendant Raymond Picard from leases made to date is hereby denied."

From that judgment both parties have appealed.

I

On Appeal of Raymond Picard

■ Counsel for Raymond Picard contend that the trial court erred in awarding to Mrs. Richards "an undivided one-fifth royalty interest or non-participating mineral interest," and that she is entitled only to one-fifth of one-eighth royalty interest or a "one-fortieth non-participating royalty" in all minerals when produced, during her lifetime only. Of course the trial court could hardly be blamed for decreeing to her the interest which was stipulated in the divorce decree as heretofore mentioned. Counsel for Picard were his counsel at the time of the divorce and doubtless participated in the subsequent agreement. However, it was said in Hickey v. Dirks, 156 Kan. 326, 133 P.2d 107, 109: "As we have had frequent occasion to observe, terms relating to conveyances of oil and gas interests have often been loosely and inaccurately used." So, notwithstanding what counsel did at the time of the divorce decree, we must hold that their present contention that Mrs. Richards is entitled under the present lease to only one-fifth of one-eighth or a one-fortieth of the total production is correct. Counsel for Mrs. Richards during the oral argument in this court conceded that to be correct. If she were entitled to one-fifth or twenty percent of all the minerals produced, she would get all of the one-eighth royalty specified in the lease to the California Company. In addition to that, she would be entitled to 7½ percent from someone—not the California Company. That is too irrational and the court cannot accept such interpretation even without testimony in that connection. Cook v. McClellan, Okl., 311 P.2d 244, 245, presents a similar situation. The reservation in that case was as follows: " 'Except the first party reserves to himself, his heirs or assigns an equal one sixteenth Royalty interest in all Oil, Gas or Mineral rights.' " The court held that the party was entitled to one-sixteenth of the usual one-eighth royalty.

**122**

The judgment of the trial court must accordingly be modified.

## II

### On Appeal of Mrs. Richards

█ Counsel for Mrs. Richards contend that the trial court erred in not awarding her an interest in the bonus and delay rental received by Picard. The kind of interest which Mrs. Richards received under the original agreement and deed is clear. She was entitled to a non-participating royalty. That term has been defined in quite a number of cases and the authorities on that subject seem to be unanimous. In the case of Arnold v. Ashbel Smith Land Company, Tex.Civ.App., 307 S.W.2d 818, 825, the court said:

"In Section (d) of the reservation, appellee's royalty is denominated non-participating. There are certain attributes of a non-participating royalty. It is an interest in minerals which is nonpossessory in that it does not entitle the owner to produce the minerals himself, or permit him to join in leases of the mineral estate to which the royalty is appurtenant, and does not entitle the owner to share in the bonus or delay rentals, if any, paid for such lease. It merely entitles the owner to a certain share of the production under said lease free of expenses of exploration and production. * * *"

In the case of Mounger v. Pittman, 235 Miss. 85, 108 So.2d 565, 566, the court said:

"The distinguishing characteristics of a non-participating royalty interest are: (1) Such share of production is not chargeable with any of the costs of discovery and production; (2) the owner has no right to do any act or thing to discover and produce the oil and gas; (3) the owner has no right to grant leases; and (4) the owner has no right to receive bonuses or delay rentals. * * *"

To the same effect are 3A Summers, Oil and Gas, § 572, p. 8, and § 586, p. 76, (1958); Jones, Non-Participating Royalty, 26 Tex.L.Rev. 569; and a number of cases cited in 1 Williams and Meyers, Oil and Gas Law, § 302.2, p. 451, n. 2. We see no reason why we should not accept the rule of these authorities as correct. It seems plain, accordingly, that under the original agreement of the parties and the deed from Mrs. Richards to Picard, the former is not entitled to any bonus or delay rental. And unless it is reasonably clear from later provisions in the divorce decree and the subsequent agreement that the rights of Mrs. Richards were intended to be enlarged, we must base our decision herein on the provisions made by the parties which appear to be plain.

█ Counsel for Mrs. Richards entirely ignore the original agreement and the deed to Picard and assert that Mrs. Richards, by the divorce decree and the subsequent agreement, received a "mineral interest" which is larger than a royalty interest. They call our attention to the holding in Houghton v. Thompson, 57 Wyo. 196, 115 P.2d 654, to the effect that the court which is called upon to interpret a contract to convey an interest in oil and gas should consider not only the terms of the writing, but also the surrounding circumstances, the attending facts showing the relation of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract. Applying that rule in this case, we must consider not only the provisions in the divorce decree and the later agreement but also the original agreement and the deed to Picard. We have already considered the latter. The divorce decree and the subsequent agreement contain no direct statement that an enlargement of the interest of Mrs. Richards was intended. Nor is there any testimony to that effect. If, then, such enlargement were intended, that must be gathered from the wording of that decree and agreement. But the mere fact that that decree and agreement describe

the interest which Mrs. Richards obtained as a "mineral interest" does not necessarily determine that her rights were enlarged over those which she had under the original agreement. It is stated in 1 Williams and Meyers, Oil and Gas Law, § 304.3, as follows:

> "The description of an interest * * as a fractional 'mineral interest,' or as 'mineral acres' has influenced some courts (to some degree) to construe the interest as a mineral interest. But in each case other factors also contributed to such construction. If such other factors point toward a royalty construction, they may outweigh the mineral interest terminology so that a royalty construction is made."

We think that in this case there are such other factors. 1 Williams and Meyers devotes more than one hundred pages (pp. 443–550) to "Mineral-Royalty Distinction", showing that the subject is somewhat involved. The authors in § 301, p. 436, define the term "Royalty" in the strict sense as a share of the product or proceeds therefrom, reserved to the owner of the land for permitting another to use the property. In Hardwicke, Royalty Clauses, 29 Tex.L. Rev. 790, it is stated that:

> "* * * the royalty created, excepted, or reserved under the terms of an oil and gas lease is a right to receive, either in kind or its equivalent in money, a stipulated fraction of the oil and gas. * * *"

The right or estate is carved out of the mineral fee estate. Jones, Non-Participating Royalty, 26 Tex.L.Rev. 569. The term "royalty" in its broad sense is a "mineral interest" or, if that is too technical, an interest in mineral rights. Melton v. Sneed, 188 Okl. 388, 109 P.2d 509, 513. We mention this merely for the purpose of calling attention to the fact that since the parties were confused in designating the interest which Mrs. Richards has, as already shown, we must not lay too much stress upon the terminology of "mineral interest" as used in the divorce decree and the subsequent agreement rather than the terminology used in the original agreement.

■ There may be an estate in minerals, larger than a royalty interest, which in 1 Williams and Meyers, Oil and Gas Law, § 301, p. 431, is called a "mineral estate", at times stated as a "mineral interest." It is an estate in fee simple in and to the minerals. Simson v. Langholf, 133 Colo. 208, 293 P.2d 302. In Stokes v. Tutvet, 134 Mont. 250, 328 P.2d 1096, it is called a mineral fee. A conveyance or reservation thereof gives title to the minerals in place (in situ). Rist v. Toole County, 117 Mont. 426, 159 P.2d 340, 162 A.L.R. 406. Bonus and delay rentals, or a portion thereof, go with such an estate, as shown by the foregoing cases. As remarked by Jones, Separation of "Leasing Rights", Institute on Oil and Gas Law and Taxation, pp. 271, 292 (1951), "it is sometimes difficult to determine whether the reserved interest should be regarded as a royalty interest or as an interest in the mineral fee estate." A clear statement in this connection may be found in the case of Burns v. Audas, Tex. Civ.App., 312 S.W.2d 417, cited by counsel for Mrs. Richards, where the court said in part at 312 S.W.2d 420:

> "* * * The ownership of an *unrestricted* mineral interest includes all the incidents of ownership, some of which are the right to execute oil, gas and mineral leases and the right to receive bonuses, rentals and royalties. * * *" (Emphasis supplied.)

See also Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543. In the case at bar, as we shall discuss, the reservation is not unrestricted. Counsel for Mrs. Richards also cite us to Martin v. Snuggs, Tex.Civ. App., 302 S.W.2d 676, and Westbrook v. Ball, 222 Miss. 788, 77 So.2d 274, to the effect that when a grant is made, but minerals are reserved, all are reserved except those specifically granted. These cases

are not in point herein. There is no grant in this case except in the deed to Raymond Picard, and that states specifically that only a limited right was reserved.

The mineral interest which Mrs. Richards has is designated in the divorce decree as "a non-participating undivided one-fifth of the parties mineral interest in and to the above-described lands and premises during her lifetime only, it being specifically understood that the said Raymond Picard shall retain all control of said mineral interest subject to full disclosure at any reasonable time to Evelyn Kathryn Picard." The interest, accordingly, is limited and hedged in on the one hand by the term "non-participating" and on the other hand by the complete control of the mineral interest by the owner of the land. We might mention here that the right to give a mineral lease is usually called the executive power. Let us first consider the limitation that the interest, whatever it may be, is non-participating. What does that term mean? Regrettably counsel have not enlightened us on this point. We noted above that various restrictions exist in connection with "non-participating royalty." It would seem that the same or similar restrictions may or should exist in the case of a non-participating mineral interest. What restrictions, in the absence of provisions to the contrary, are to be applied or not applied? The restriction as to bonus only? Or the restriction as to delay rental only? Or some other restriction only? Plainly we cannot tell, and yet it is quite certain that some or all of the restrictions that may be made must be applied. We see no escape from the fact that in this case we are not permitted to limit the term "non-participating" to any one restriction, but must apply the term broadly. When so applied to a mineral interest, that would leave an interest in the mineral but in nothing else. The rule which is applied to a non-participating royalty is so closely analogous here that we cannot see how we can fail to apply that rule to the term "non-participating mineral interest." We are unable to perceive any difference.

What we have said is emphasized, if any emphasis is necessary, by the provision that the control of the mineral interest is exclusively in the owner of the land, that is to say, Raymond Picard. That takes away at least a number of the attributes of a mineral estate in fee. Speaking of the attributes of such an estate, the court in Mounger v. Pittman, supra, after stating the attributes of a non-participating royalty as above quoted, stated as follows at 108 So.2d 566:

"  *   *   * Conversely, the distinguishing characteristics of an interest in minerals in place are: (1) Such interest is not free of costs of discovery and production; (2) the owner has the right to do any and all acts necessary to discover and produce oil and gas; (3) the owner has the right to grant leases, and (4) the owner has the right to receive bonuses and delay rentals. *   *   *"

It is quite clear that the non-participating mineral interest involved in this case does not fit the definition given to a mineral estate in fee, so that it would seem to follow that the interest conveyed is only a royalty interest. In the case of Ledoux v. Voorhies, 222 La. 200, 62 So.2d 273, 2 Oil and Gas Reporter 172 (1952), it appears that plaintiffs conveyed an interest in land reserving to plaintiffs an interest designated as an 8⁄24th mineral interest but granting to grantees the exclusive right to execute oil and gas leases. It was held that under a provision of that sort the plaintiffs were not entitled to any bonus or delay rental and that a grant of the power to lease carried with it the right to bonus and delay rentals. 1 Williams and Meyers, Oil and Gas Law, § 304.10, p. 493, commenting on this case, states:

"If one accepts the premise of Ledoux v. Voorhies that the grant or reservation of the executive right is intended also as a grant or reservation of bonus and rental, it is clear sailing to the conclusion that a leasing interest is a mineral interest and a non-

leasing interest is a royalty interest.
* * *"

The authors doubt, however, that that should be the rule and on p. 494 state:

" * * * With the use of clear-cut language creating a mineral interest, lacking only the executive right, the most probable intent is to create an interest that shares in bonus and rental, as well as royalty, and that shares proportionately in such interests * *."

It is not necessary for us at this time to disagree with the authors in their conclusion but, as may be noted, in the case at bar there is no "clear-cut language" creating a mineral estate in fee, but an interest which is non-participating. We think, accordingly, that, bearing in mind the two factors above mentioned, namely, the mineral interest is non-participating and the owner of the land has exclusive control over it, we cannot escape the conclusion that the interest which Mrs. Richards has in the case at bar is in the nature of a royalty interest and that she is not entitled to bonus or delay rental.

The cause is, accordingly, remanded to the District Court of Fremont County with direction to modify its judgment herein by limiting the right of Mrs. Richards to one-fifth of one-eighth or a one-fortieth of all minerals produced under the present lease during her lifetime, and to one-fifth of all royalties under future leases of the lands herein involved, during her lifetime, with no share in bonuses or delay rentals. As so modified, the judgment of the trial court is affirmed.

We should perhaps mention that we do not mean to infer that Mrs. Richards would be without the right of equitable relief should a future lease be entered into by Picard which would be inequitable to her. The question is not before us at this time since both parties have joined in a lease which appears to be reasonable and equitable. See the discussion in 26 Tex. L.Rev. 572–598.

Affirmed as modified.